**(STAY & JS-6 Admin)**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENPOWER MOTOR COMPANY, INC., a Delaware corporation; GREENPOWER MOTOR COMPANY INC., a Canadian corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PHILLIP OLDRIDGE, an individual; DAVID OLDRIDGE, an individual; SUSAN EMRY, an individual; S&P 500 FINANCIAL AND CORPORATE SERVICES INC., a Kansas corporation; ENVIROTECH ELECTRIC VEHICLES INC., a Canadian corporation; EVT MOTORS INC.; ENVIROTECH DRIVE SYSTEMS INCORPORATED, a Wyoming corporation; ENVIROTECH DRIVE SYSTEMS INCORPORATED, a Canadian corporation; ENVIROTECH VEHICLES, INC. a Delaware corporation; JOHN DOE TRUSTEE #1; and DOES 1-50 inclusive,<br><br>Defendants. | Case No. 5:22-cv-00252-SSS-SHKx<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY [DKT. 36], AND GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [DKT. 37]** |

Before the Court is Defendants' Request for Judicial Notice [Dkt. 37], and Defendants' Motion to Stay or, in the Alternative, to Dismiss Complaint [Dkt. 36]. The Court has reviewed the Parties' submissions, and for the reasons stated below, **GRANTS** Defendants' Request for Judicial Notice [Dkt. 37], **GRANTS** Defendants' Motion to Stay [Dkt. 36], and **DENIES AS MOOT** Defendants' Motion to Dismiss the complaint.

## I. REQUEST FOR JUDICIAL NOTICE

Defendants request judicial notice of publicly filed documents from two cases involving parties to this case in the Superior Court of British Columbia (*GreenPower v. Oldridge et al.*, Action No. S-1914285 (the "Canadian Action") and *42 Design Works, Inc. v. GreenPower*, Action No. S-207532), and in the Superior Court of California for Tulare County (*Oldridge v. GreenPower*, Case No. VCU287280 (the "California State Action")). Plaintiffs GreenPower Motor Company, Inc. a Delaware Corporation ("GreenPower US") and GreenPower Motor Company, Inc., a Canadian Corporation ("GreenPower Canada"), (collectively "GreenPower"), do not oppose. Judicial notice is proper of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court has reviewed Exhibits A–K of Defendants' Request for Judicial Notice, [Dkts. 37–37-11], and finds they are proper for judicial notice. The Court thus **GRANTS** Defendants' request and considers these documents on Defendants' motion to dismiss.

## II. BACKGROUND

### A. The Canadian Action

In December 2019, GreenPower Canada filed the Canadian Action in the Supreme Court of British Columbia against Phillip Oldridge ("Oldridge"), an unnamed trustee of "Phillip Oldridge in Trust," and three Envirotech companies.

[Dkt. 37-1]. In the Canadian Action, GreenPower alleged the following causes of action: (1) Breach of Fiduciary Duty, (2) Breach of Fidelity, (3) Breach of Confidence, (4) Breach of Contract, (5) Competitive Conduct, (6) Breaches of Confidence, (7) Securities Breach, (8) Negligent Misrepresentation, (9) Unlawful Means Conspiracy, and (10) Predominant Purpose Conspiracy. [Dkt. 37-6 at 17–19]. The Canadian Action specifically centered around three categories of alleged misconduct by Oldridge:

1. "Manipulative sales": Oldridge "directly or indirectly" sold shares of GreenPower Canada in order to "cause the reported share price to trend downward over a period of time . . . ." [Dkt. 37-1 ¶ 2(a)]. GreenPower Canada also alleged that Oldridge "conspired with others" to make such sales. [*Id.*].

2. "Negligent misrepresentation and Securities Breach": Oldridge sold shares in 2016 and 2018, and later filed insider trading reports on the System for Electronic Disclosure ("SEDI"); GreenPower Canada appears to allege that these disclosures were inconsistent with Oldridge's "representations" previously made to GreenPower Canada. [*Id.* ¶ 2(c)–(f)].

3. "Unfair competition": Oldridge formed and advanced the interests of several Envirotech businesses that are in direct competition with GreenPower Canada; such formations "breached his duties of loyalty, fidelity, and confidence that he owed GreenPower." [*Id.* ¶ 2(g)]. GreenPower Canada also alleged that "competitors" unlawfully conspired with Oldridge to further their businesses and unfairly compete with GreenPower. [*Id.* ¶ 2(h)].

**B. The California State Action**

In June 2021, Oldridge filed a complaint in California Superior Court against GreenPower Canada and two of its officers. [Dkt. 37-6]. Oldridge

alleged that GreenPower Canada violated Oldridge's statutory and contractual rights by refusing to allow him to exercise stock options.

GreenPower argued that Oldridge's case should "be stayed due to the risk of overlapping issues, divergent rulings, and the potential for harassment." [Dkt. 37-8 at 2]. Applying California law, GreenPower argued "there is real potential for conflict in that there are multiple breach of employment contract claims pending in different jurisdictions. What would the parties do if each court ruled differently on an issue?" [*Id.* at 5]. GreenPower also argued that "the [Canadian Action] has already advanced [] quite far, given that case has already been pending since December 17, 2019" and noted "[r]esponses and a counter-claim has already been filed and discovery commenced." [*Id.*]. Moreover, GreenPower argued the need for comity to Canadian courts. [*Id.*].

The California court agreed and stayed the case until the counterclaim in the Canadian Action had been tried or settled. [Dkt. 37-11 at 5]. The court reasoned "[t]he issues presently before this court are substantially similar to the issues that are presently being litigated in the [Canadian Action]." [*Id.*]. Thus, "to allow both cases to proceed concurrently would be both inefficient and create severe risk of conflicting judgments and prejudices." [*Id.*].

C.   **The Instant Action**

On February 8, 2022—less than three months after securing its own stay Order in the California State Action—GreenPower filed the instant action against Oldridge, David Oldridge, and Susan Emry, a management company associated with Oldridge and Emry named S&P 500 Financial and Corporate Services, Inc., and Envirotech, entities that GreenPower calls "the Competitors." [Dkt. 1 ¶¶ 1–16].

The instant complaint alleges nine causes of action: (1) Civil RICO Violations, (2) Conspiracy to Commit Civil RICO Violations, (3) Breach of Fiduciary Duty, (4) Conspiracy to Commit Breach of Fiduciary Duty,

(5) Breach of Contract, (6) Conversion, (7) Violation of the Defend Trade Secrets Act, (8) Violation of Business & Professions Code § 17200, and (9) Unfair Competition (Business & Professions Code § 16727). [Dkt. 1]. With a few minor exceptions, the factual allegations in the instant complaint are nearly identical to the allegations in the Canadian Action. *Compare* Dkt. 1 *with* Dkt. 37-1.

## III. LEGAL STANDARD

Where there is a parallel proceeding pending in a foreign country, the international abstention doctrine permits federal district courts to decline exercising jurisdiction over a proceeding under "exceptional circumstances." *Chateau Sch., Inc. v. Green Mountain Assocs. Inc.*, No. CV 18-00030, 2019 WL 692794, at *3 (D. Haw. Feb. 19, 2019) (citing *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194–95 (9th Cir. 1991)).

The Ninth Circuit employs an analysis under the *Colorado River* doctrine to determine whether to stay a proceeding when a parallel judicial proceeding is pending. *Id.* (citing *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1157 (C.D. Cal. 2005) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976))). Under the *Colorado River* doctrine, the threshold question is whether the two actions are sufficiently parallel, i.e., whether "substantially the same parties are contemporaneously litigating the same issues in different forums." *Young Money Ent., LLC v. Universal Music Grp., Inc.*, No. CV 16-2096, 2016 WL 9450681, at *4 (C.D. Cal. July 29, 2016). If the actions are sufficiently parallel, the Court then looks to the following eight factors in *Colorado River* to determine whether to issue a stay:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5)

whether federal law or foreign law provides the rule of decision on the merits; (6) whether the foreign court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the foreign court proceedings will resolve all issues before the federal court.

*Id.* (citing *R.R. Street & Co. v. Transport Inc. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011)). Some factors may be irrelevant to the present case and are disregarded. *Goodin v. Vendley*, 356 F. Supp. 3d 935, 945 (N.D. Cal. 2018) (citing *Nakash*, 882 F.2d at 1415 n.6). When it is appropriate for a court to decline to exercise jurisdiction pursuant to the *Colorado River* doctrine, the Ninth Circuit generally requires a stay rather than dismissal because a stay "ensures the federal forum will remain open" if the alternate forum turns out to be inadequate. *Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017) (citations omitted).

## IV. ANALYSIS

As set forth below, the *Colorado River* analysis weighs in favor of granting a stay of the instant action.

### A. Parallelism

"'[E]xact parallelism' is not required; '[i]t is enough if the two proceedings are "substantially similar."'" *Young Money*, 2016 WL 9450681, at *4 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). Two proceedings are "substantially similar" when "substantially the same parties are contemporaneously litigating the same issues in different forums." *Id.* "[T]he existence of substantial doubt as to whether the [alternate] proceeding will resolve the federal action precludes the granting of a stay." *Id.* (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993)). However, "courts should be 'particularly reluctant to find that the actions are not

parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Montanore*, 867 F.3d at 1170 (citing *Nakash*, 882 F.2d at 1417).

Here, the Canadian Action and the instant action are substantially similar. First, both actions involve substantially the same parties; GreenPower, Phillip Oldridge, Envirotech Electric Vehicles, Inc., EVT Motors, Inc., Envirotech Drive Systems Incorporated, and John Doe Trustee #1 of Phillip Oldridge in Trust are all common parties to both actions. [*Compare* Dkt. 1 with Dkt. 37-1].

GreenPower claims that the two actions involve different parties because "Sue Emry, S&P 500 Financial and Corporate Services, Inc., and Enirotech [sic] Vehicles, Inc. are defendants in this action but not in the Canadian Action." [Dkt. 51 at 10 (citing Dkt. 37-1 ¶ 5; Dkt. 37-5 at 2]. According to GreenPower, "[f]or this reason alone, abstention under the *Colorado River* Doctrine would be improper because resolution of the Canadian Action[] would not lead to resolution of this action." [Dkt. 51 at 10]. GreenPower is wrong.

Exact parallelism is not required. As Defendants point out, these non-overlapping Defendants are "corporate entities owned and operated by the parties," with the sole exception of Ms. Emry, who is an officer of a new party. *Nakash*, 882 F.2d at 1417; [Dkt. 1 ¶¶ 2, 10, 13–14]. These nominal differences in the lists of defendants do not counsel against a stay nor do they outweigh the fact that the majority of the parties in the two cases **do** overlap. *See Nakash*, 882 F.2d at 1417; *see also Young Money*, 2016 WL 9450681, at *5 ("Though the two actions involve different defendants and facially different disputes, they center around common facts and issues.").

Second, the Canadian Action and instant action both center around common facts and issues. Both actions involve the same three categories of alleged misconduct by Oldridge and the Envirotech entities: (1) manipulation of GreenPower's stock price, (2) failure to report sales of GreenPower shares, and (3) conspiring to compete with GreenPower.

1    In opposition, GreenPower argues that the claims and relief sought in
2 each action are technically different and thus dissimilar. Greenpower argues
3 that the Canadian Action involves claims not present in the instant action,
4 namely 1) breach of implied duties, 2) negligent misrepresentation, and 3)
5 conspiracy to commit unlawful means and intent to injure. But GreenPower's
6 argument is misguided. If the instant action contained only a subset of the
7 claims in the Canadian Action, this Court would be even more inclined to grant
8 a stay because this action would be "but a 'spin-off' of [the] more
9 comprehensive [Canadian] litigation." *Montanore*, 867 F.3d at 1170 (citing
10 *Nakash*, 882 F.2d at 1417).

11   Greenpower also argues that the Canadian Action does not assert claims
12 which are present in the instant action: Civil RICO and conspiracy to commit
13 Civil RICO, breach of fiduciary duty or conspiracy to breach such a duty, trade
14 secret misappropriation, nor claims under California Business and Professions
15 Code sections 17200 or section 16727. [Dkt. 51 at 11]. GreenPower also notes
16 that the instant action seeks compensatory and punitive damages and injunctive
17 relief, whereas the Canadian Action does not seek injunctive relief.

18   But GreenPower's arguments are, at best, incorrect, and at worst,
19 disingenuous. First, the Canadian Action **does** assert, in multiple instances, a
20 claim for breach of fiduciary duty. [Dkt. 37-1 at 17 ("As against Oldridge:
21 General damages for breach of fiduciary duty . . . .)].

22   Second, while GreenPower relies on the presence of its claims for
23 Conspiracy to Breach Fiduciary Duty and violation of California Business and
24 Professions Code Section 16727 to distinguish the instant case from the
25 Canadian Action, it also requests dismissal of both claims from the instant

action.[1]  [*See* Dkt. 51 at 22–23; 25].  Such voluntarily dismissed claims are an improper basis to oppose a stay.

Third, these technical differences between the alleged claims in each of the cases do not overpower the overlapping facts and issues involved.  For example, the allegations GreenPower claims are unique to the instant action are all premised on facts alleged in the Canadian Action.  [*See* Dkt. 37-1 ¶¶ 2–3, 37(c) (RICO and RICO Conspiracy), ¶¶ 1–2 (Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty), ¶ 39 (trade secret misappropriation), ¶ 10 (Business & Professions Code § 17200), ¶ 10 (Business & Professions Code § 16727)].

Finally, GreenPower's argument that the two actions are not substantially similar is incredible because almost every factual allegation in the instant complaint is copy-and-pasted from the complaint in the Canadian Action.  [*Compare* Dkt. 1 ¶¶ 20–24 ("GreenPower's Business") *with* Dkt. 37-1 ¶¶ 11–15 (same); *compare* Dkt. 1 ¶¶ 25–28 ("P. Oldridge's Shareholdings In GreenPower") *with* Dkt. 37-1 ¶¶ 16–19 (same); *compare* Dkt. 1 ¶¶ 29–32 ("P. Oldridge's Duties to GreenPower") *with* Dkt. 37-1 ¶¶ 20–23 (same); *compare* Dkt. 1 ¶¶ 33–46 ("P. Oldridge's Misrepresentations and Misconduct") *with* Dkt. 37-1 ¶¶ 24–34 ("Oldridge's Misrepresentation and Securities Breach"); *compare* Dkt. 1 ¶¶ 47(a)–(d) ("The Competitors") *with* Dkt. 37-1 ¶¶ 35(a)–(d) (same); *compare* Dkt. 1 ¶¶ 48–56 ("P. Oldridge's Breaches of Legal Duties") *with* Dkt. 37–1 ¶¶ 36–42 (same); *compare* Dkt. 1 ¶¶ 57–59 ("P. Oldridge Is Summarily Dismissed and Then Purports to Resign") *with* Dkt. 37-1 ¶¶ 43–45 ("Oldridge is

---

[1] Given the seemingly frivolous nature of GreenPower's Fourth and Ninth Causes of Action and GreenPower's admission that factual allegations do not exist to support them, the Court **DISMISSES** GreenPower's Fourth Claim for Conspiracy to Breach Fiduciary Duty and Ninth Claim for Unfair Competition in violation of California Business and Professions Code Section 16727 **WITH PREJUDICE**.

Summarily Dismissed as CEO, then Resigns as Director"); *compare* Dkt. 1 ¶¶ 60–64 ("Intention to Harm") *with* Dkt. 37-1 ¶¶ 46–49 (same); *compare* Dkt. 1 ¶¶ 65–69 ("Conspiracy") *with* Dkt. 37-1 ¶¶ 55–58 (same)] *see Montanore*, 867 F.3d at 1170 (9th Cir. 2017) ("[W]e are 'particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation.'") (citing *Nakash*, 882 F.2d at 1416). Thus, the Canadian and instant action are substantially similar, and the analysis proceeds to the eight *Colorado River* factors.

### B. The Colorado River Factors

While some of the *Colorado River* factors do not apply in the case, the relevant remaining factors, taken as a whole, weigh in favor of granting a stay.

#### 1. Factor 1: Which court first assumed jurisdiction over any property at stake

There is no property at stake. This factor is thus irrelevant and disregarded. *See Young Money*, 2016 WL 9450681, at *6.

#### 2. Factor 2: The inconvenience of the federal forum

Defendants argue that the second factor is also irrelevant because the complaint does not plead sufficient facts to determine where the alleged wrongdoing occurred and where evidence is located to determine if one forum is more convenient. [Dkt. 36 at 15 (citing *Ross v. U.S. Bank. Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1022 (N.D. Cal. 2008))]. The Court agrees and GreenPower does not dispute Defendants' position. Thus, this factor is also irrelevant and disregarded.

#### 3. Factor 3: The desire to avoid piecemeal litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Montanore*, 867 F.3d at 1167 (citing *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). "For this factor to

-10-

favor a stay, 'the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding,' and which 'the court could [not] have avoided by other means.'" *Id.* (citing *R.R. St.*, 656 F.3d at 979).

The core issues in the instant case are mirrored in the Canadian Action: whether Oldridge sought improper expenses, whether Oldridge breached his fiduciary or contractual duties to Greenpower by working with competitive enterprises, whether Oldridge wrongfully procured GreenPower confidential or trade secret information, whether Oldridge made misrepresentations related to securities, and whether Oldridge wrongfully conspired with competitors. Because these issues are common between the Canadian Action and the instant case, and because both cases require resolution of these issues, *see Young Money*, 2016 WL 9450681, at *6, denying a stay would certainly result in duplicative efforts, potentially produce conflicting results, and "not promote 'conservation of judicial resources and comprehensive disposition of litigation,'" *see Montanore*, 867 F.3d at 1167. Thus, this factor weighs in favor of granting a stay.

### 4. Factor 4: The order in which the forums obtained jurisdiction

The order in which the forums obtained jurisdiction is not evaluated mechanically, but rather based on "the realities of the case at hand" "in a pragmatic flexible manner." *Montanore*, 867 F.3d at 1168 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). The Court considers, for example, the relative progress of the action in each forum. *Id.* (citing *Am. Int'l Underwriters*, 843 F.2d at 1258).

Here, the Canadian Action obtained jurisdiction first and has progressed meaningfully beyond the instant action. The Canadian Action was filed in December 2019 whereas the instant action was filed in February 2022. [Dkts. 1, 37-1]. Moreover, as GreenPower itself argued when it sought a stay of the

California State Action, "[the Canadian Action] has already advanced quite far, given that case has already been pending since December 17, 2019," and "[r]esponses and a counter-claim has already been filed and discovery commenced." [Dkt. 37-8 at 5]. Here, as was the case in the California State Action when GreenPower sought a stay, "the case is not even through the pleadings stage," [*id.*], and GreenPower does not dispute the advanced progression of the Canadian Action. This factor thus weighs in favor of a stay.

### 5. Factor 5: Whether federal law or state law provides the rule of decision on the merits

This factor favors a stay if the case involves questions of foreign law that are complex and difficult and are better resolved by the foreign court. *See Montanore*, 867 F.3d at 1168. While Defendants argue that federal law does not control the instant action, the proper inquiry is whether **foreign law** controls. *Id.* Defendants "ha[ve] not made any argument identifying how [Canada's] laws would control the underlying action," *Chateau*, 2019 WL 692794, at *6, and GreenPower does not provide any argument regarding this factor. Therefore, this factor is neutral and weighs against a stay. *See Montanore*, 867 F.3d at 1166 ("[A]ny doubt as to whether a factor exists should be resolved against a stay.") (citing *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017)).

### 6. Factor 6: Whether the foreign court proceedings can adequately protect the rights of the federal litigants

"This factor concerns 'whether the [foreign] court might be unable to enforce federal rights.'" *Montanore*, 867 F.3d at 1169. If the foreign court "cannot adequately protect the rights of the federal litigants," a Colorado River stay is inappropriate. *Id.* (citing *R.R. St.*, 656 F.3d at 981).

Here, it is unclear whether Canada can protect GreenPower's rights. GreenPower argues that the Canadian court cannot protect its rights because the

Canadian Action does not assert the exact claims asserted here, namely the Civil RICO claim, DTSA claim, or the claims under the California Business and Professions Code.  Moreover, GreenPower argues that "there is no federal trade secrets act or equivalent statute" in Canada.  [Dkt. 51 at 11 (citing Dkt. 52 ¶ 2)]. In response, Defendants argue that GreenPower's claims here arise from the same facts as alleged in the Canadian Action and can be resolved through the claims asserted therein.

      Here, it is unclear whether the Canadian Action can adequately protect GreenPower's rights asserted in the instant action.  For example, while Canada may not have a federal statute equivalent to the Defend Trade Secrets Act here in the United States, Canadian common law does recognize trade secret law albeit not in the form of a federal statute.  [*See* Dkt. 52 ¶ 2].  Moreover, given the overlap of factual allegations between the Canadian Action and the instant action, it appears that the Canadian Action may help resolve some issues and claims in the instant action, but the areas where there is no overlap are unclear. For example, the Canadian Action involves allegations that Oldridge breached his duty to "not misappropriate, misuse or otherwise disclose GreenPower's confidential information." [Dkt. 37-1 ¶¶ 21–23].  Resolution of whether Oldridge breached this duty will likely help resolve the issues relevant to GreenPower's claim under the DTSA in the instant action.

      Because there exists at least some doubt as to whether this factor favors a stay, it weighs against staying the instant action.  *See Montanore*, 867 F.3d at 1166.  However, because of the significant overlap of the facts and issues involved in the two cases, the Canadian Action will likely resolve a large portion, if not all, of the issues in the instant case.  Moreover, because a stay would not foreclose GreenPower from returning to this forum to resolve any remaining claims, this factor only weighs slightly against a stay.  *See Young Money*, 2016 WL 9450681, at *7 ("A stay does not prevent Plaintiffs from

returning to this action to assert claims they may have against these Defendants once the rights and obligations of the Parties to the various agreements between Plaintiffs and Cash Money (which does not include these Defendants) are determined.").

### 7. Factor 7: The desire to avoid forum shopping

Evidence of forum shopping "weighs strongly in favor" of a stay. *See Young Money*, 2016 WL 9450681, at *8 (citing *Nakash*, 882 F.2d at 1417. However, Defendants do not point to any such evidence of forum shopping by GreenPower. Instead, Defendants argue that "the filing of a substantially similar case in a second forum weighs in favor of stay." [Dkt. 36 at 21]. But the filing of a substantially similar case in federal court, on its own, does not constitute forum shopping if a party "'acted within his rights in filing a suit in the forum of his choice,' even where '[t]he chronology of events suggests that both parties took a somewhat opportunistic approach to th[e] litigation.'" *Goodin*, 356 F. Supp. 3d at 947; *see also Young Money*, 2016 WL 9450681 at *8 (finding argument that the filing of a substantially similar case constitutes forum shopping is "too speculative"). Because there is no evidence that either party "sought to manipulate the litigation or engage in vexatious behavior that would lead to forum shopping," this factor is irrelevant and disregarded. *See Chateau School*, 2019 WL 692794, at *6.

### 8. Factor 8: Whether the foreign court proceedings will resolve all issues before the federal court

Under this factor, "exact parallelism is not required," substantial similarity between the two cases is sufficient to warrant a stay. *Montanore*, 867 F.3d at 1170. This factor may weigh in favor of stay even if there is not complete overlap between the parties, and even if the federal suit includes additional claims. *Id.*

As discussed above, the Canadian Action and the instant action are substantially similar because they both involve the same three categories of alleged misconduct by Oldridge and the Envirotech entities: (1) manipulation of GreenPower's stock price; (2) failure to report sales of GreenPower shares; (3) conspiring to compete with GreenPower. Moreover, the Canadian Action will necessarily resolve the core issues in this case: whether Oldridge sought improper expenses, whether Oldridge breached his fiduciary or contractual duties to Greenpower by working with competitive enterprises, whether Oldridge wrongfully procured GreenPower confidential or trade secret information, whether Oldridge made misrepresentations related to securities, and whether Oldridge wrongfully conspired with competitors. Finally, nearly every factual allegation in the instant case is copy-and-pasted from the Canadian Action. [*Compare* Dkt. 1 *with* Dkt. 37-1].

Because Defendants seek only a stay and not dismissal of the instant case, "the federal forum will remain open if for some unexpected reason the [Canadian] forum . . . turn[s] out to be inadequate." *Montanore*, 867 F.3d at 1170 (citation omitted). Thus, this factor weighs in favor of a stay. Because the majority of the factors weigh in favor of a stay and the minority that weigh against do so only slightly, a stay is appropriate.

## V.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS** Defendants' Request for Judicial Notice of Exhibits A–K in Support of Defendants' Motion to Stay or, in the Alternative, to Dismiss. [Dkt. 37].
2. The Court **GRANTS** Defendants' Motion to Stay the instant case pending the resolution of the Canadian Action.
3. The Parties are **DIRECTED** to file a Joint Status Report by February 3, 2023 regarding the status of the Canadian Action.

4.     The Court **DISMISSES WITH PREJUDICE** GreenPower's Fourth Claim for Conspiracy to Breach Fiduciary Duty.

5.     The Court **DISMISSES WITH PREJUDICE** GreenPower's Ninth Claim for Unfair Competition in violation of California Business and Professions Code Section 16727.

6.     The Court hereby places this action in inactive status and **DIRECTS** the Clerk to close the case administratively.

**IT IS SO ORDERED.**

Dated: November 14, 2022

SUNSHINE S. SYKES
United States District Judge